UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH E. MACKEY,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>               Defendant. | CASE NO. C09-5705JRC<br><br>ORDER TO REMAND |

      This matter has been referred and reassigned to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter has been fully briefed. Plaintiff brings this action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final administrative decision.

      Plaintiff, Kenneth Mackey, applied for, but was denied, social security benefits. Plaintiff alleges he has been disabled and unable to perform any work since February 2006, following a diagnosis of rectal cancer in 2004, placement of a permanent colostomy, and removal of a portion of his bowel in February 2006.

ORDER - 1

The administrative law judge ("ALJ") found that despite plaintiff's impairments he could still perform work as a housekeeper or cleaner. Plaintiff challenges the administration's denial of his application for social security benefits, raising the following three issues:

(i) Whether the ALJ provided specific, legitimate reasons for rejecting the medical opinions of Dr. Avalon, Dr. Wright, and Dr. Reuther;

(ii) Whether the ALJ properly considered the lay witness evidence; and

(iii) Whether the ALJ properly rejected plaintiff's testimony.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

*Plaintiff's Credibility*

The ALJ found plaintiff "not credible." Tr. 19. The ALJ stated, "After considering the evidence of record, I find the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they

are inconsistent with the residual functional capacity assessment for the reasons explained below." Tr. 19.

The court must normally defer to the ALJ in the realm of credibility determinations, which are particularly within the province of the ALJ. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995). Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991)(*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ addressed plaintiff's allegations of disability and provided specific reasons to discount plaintiff's credibility. Tr. 21-22. The ALJ first noted that plaintiff claimed he always worked hard and supported himself, but he did not report his earnings or pay any taxes from 1995 through 2000 and he had very minimal earning from 2001 through 2003. Tr. 21, 53. Second, the ALJ found that plaintiff's improvement in condition and increase in daily activities belied plaintiff's statements that he was unable to work. Tr. 21. The ALJ specifically noted the

opinions of Dr. Mann and treatment records that showed plaintiff's condition was significantly improving. Id. Plaintiff's medication, in fact, allowed him to be functional. Tr. 481. Although subjective testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's limitations. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Finally, the ALJ noted several inconsistencies in plaintiff's statements throughout the record. Tr. 22. For instance, plaintiff told Dr. Reuther that he had not used marijuana in the years between 2003 and 2006. Tr. 337. However, in July 2005, physician Tim Kelly, M.D., reported that plaintiff was actively using marijuana. Tr. 425, 427. Dr. Kelly told plaintiff that such use was not condoned by the relevant regulatory agencies, and that he was concerned about plaintiff's habit. Tr. 425, 427. Nevertheless, plaintiff wished to continue his marijuana use. Tr. 427. As another example of plaintiff's inconsistent statements, the ALJ noted that plaintiff testified that he could not take testosterone because it exacerbated his cancer. Tr. 535. However, the medical records show that testosterone therapy was useful and it did not worsen his cancer. Tr. 483, 486. The ALJ acknowledged that these inconsistencies did not necessarily suggest a conscious intention to mislead, but they nevertheless rendered plaintiff's statements to be not entirely reliable. Tr. 22.

In sum, the ALJ provided several clear and convincing reasons for rejecting plaintiff's testimony about the severity of his pain and the extent of his limitations. The court finds no error in the ALJ's analysis of plaintiff's testimony or allegations regarding the severity of his impairments.

*Lay Witness Evidence.*

Plaintiff also argues the ALJ failed to properly consider the lay witness evidence provided by plaintiff's "friends and family." Plaintiff's Opening Brief at 11-12. Plaintiff asserts the ALJ failed to provide specific and germane reasons for rejecting the lay witness statements. Id. at 12. The ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The record contains statements from Al Harris, Steve Burt, Tom Bond, and Robert Roseberry (plaintiff's uncle), who all indicated that plaintiff's condition has deteriorated due to cancer. Tr. 81-89, 138-42. A review of these statements reveals little substance and mostly anecdotal accounts. They do not provide much meaningful evidence, i.e., the statements provide little context and are limited to short period of times when plaintiff is with the lay witness. Accordingly, the ALJ properly found that the lay witness statements provided very little information that the ALJ could incorporate as a work-related limitation in the residual functional capacity determination. Tr. 22. Contrary to plaintiff's argument, the ALJ did not "reject" these statements, except to the extent that they concluded that plaintiff was disabled. Instead, the ALJ found that they did not change the residual functional capacity assessment, and in fact found that the statements were "generally credible." Tr. 22.

In sum, the court finds no error in the ALJ's analysis of the lay witness statements.

/

/

/

ORDER - 5

*Treating Physician's Opinions*

Plaintiff argues the ALJ in this matter failed to properly consider the opinions of Dr. Avalon and Dr. Wright -- both treating physicians.

Generally, the ALJ will afford more weight to the opinions of treating medical professionals.  20 C.F.R. § 404.1527(d)(2).  An ALJ should "give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective ... that cannot be obtained from ... individual examinations." Id.

"When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  When an ALJ rejects the opinion of the treating physician in favor of a conflicting opinion, however, he must provide "specific and legitimate reasons supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (internal quotation marks omitted); *see also* Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998).

The ALJ in this case reviewed the medical evidence and found plaintiff's cancer and subsequent treatment and related depression causes significant limitations to his ability to perform work activities.  Tr. 18.  Upon consideration of plaintiff's residual functional capacity,the ALJ discussed the details of the medical evidence, including Dr. Reuther, Dr. Kelly, Dr. Avalon, Dr. Dronen, Dr. Michels, and the state agency consultants.  Tr. 21-24.  The ALJ found plaintiff has the residual functional capacity to perform modified light work with certain abilities and limitations.  Tr. 20.  In formulating his decision, the ALJ stated he gave "some" weight to the opinions of Dr. Michels and great weight to the opinions of state agency physical

consultants and state agency mental consultants. Tr. 23-24. However, it appears the ALJ did not provide plaintiff's treating physician any significant weight and the ALJ failed to articulate specific and legitimate reasons for discounting or rejecting the opinions of the treating physicians.

Both Dr. Avalon and Dr. Wright treated plaintiff over a period of time. Unlike the state agency consultant, who the ALJ gave great weight and who may have merely reviewed the medical records and offered their opinions without ever examining plaintiff, both these treating physicians worked with plaintiff for a significant amount of time. Their opinions should be weighed more heavily than any other examining physician or consultative opinion.

*A. Dr. Avalon*.

It appears Dr. Avalon began treating plaintiff following his completion of chemotherapy in 2005 and throughout his follow up care associated with his bowel resection surgery. Tr. 359-409. A review of Dr. Avalon's reports shows consistent treatment for pain associated with complications with plaintiff's bowels. In 2005 and 2006, Dr. Avalon opined that plaintiff had a "severely limited" overall work level, which was defined as being unable to lift at least two pounds or stand and/or walk. Tr. 361, 370, 381, 397. In 2008, Dr. Avalon opined that plaintiff's overall work level was at the sedentary level, but that he was not employable. Tr. 454-55. In November 2009, Dr. Avalon completed a physical capacities evaluation in which he indicated plaintiff could perform limited physical activity and would likely miss more than four days of work per month due to his condition. Tr. 522-23.

The ALJ gave Dr. Avalon's opinion "limited weight." Tr. 23. The ALJ believed that Dr. Avalon's statement that plaintiff's work level was at the sedentary level but not employable are inconsistent, and thus, the ALJ discounted the opinion. This is not a legitimate reason to

discount the opinion of the treating physician.  It is entirely consistent that the doctor, who is not a vocational expert or specifically trained to make a disability determination, could state that a patient could perform certain sedentary tasks, but not within the context of a job.  For instance, many social security recipients would be able to do some household chores, but still not be able to do the demands of a sedentary job within a work setting.  At the very least, if the ALJ believed Dr. Avalon's statements were ambiguous or contradictory, the ALJ should have asked the treating physician to clarify his opinion so that it was not misinterpreted.  *See* 20 C.F.R. §416.912(e)(the ALJ has a duty to recontact a treating physician if the ALJ needs additional information or clarification).

The ALJ rejected Dr. Avalon's opinion that plaintiff would likely miss more than four days of work per month because the ALJ found Dr. Avalon's evaluation conclusory, without any explanation in forming the opinion.  The ALJ erred in making this a basis for his rejection.  A review of the report, along with Dr. Avalon's earlier reports, clearly shows the treating physician believes that the complications, including a bowel resection and rectal abscess, would explain the basis for his opinion.  The ALJ cannot read the physical evaluation independent of Dr. Avalon's other reports.  Again, if the ALJ needed clarification or a more detailed understanding for Dr. Avalon's evaluation, rather than merely reject this opinion as conclusory, the ALJ was required to recontact the treating physician and ask for additional information or clarification.  20 C.F.R. §416.912(e).

### *B.  Dr. Wright*

Dr. Wright treated plaintiff at the same medical clinic for the same time periods as Dr. Avalon.  Dr. Wright completed DSHS evaluations in November 2007 and May 2008, and like

Dr. Avalon he indicated plaintiff's overall work level was at sedentary level and that he was permanently disabled. Tr. 458 & 474-475.

The ALJ did not specifically mention Dr. Wright in his written decision, but did generically refer to his evaluations at the same time he was rejecting Dr. Avalon's evaluation opinions. Tr. 22- 23. For the same reasons – believing they were internally inconsistent -- the ALJ found these opinions "less persuasive." Tr. 23. As discussed above, the court does not find this to be a legitimate reason to reject the opinion of a treating physician. It is not clear that the opinion is inconsistent.

Moreover, the court notes that even if the court accepted that ALJ's interpretation of the treating physician's opinion as inconsistent with total disability, the ALJ did not even accept the treating physician's opinion that plaintiff is limited to sedentary work. Instead, the ALJ found plaintiff could perform certain types of light work, and the ALJ failed to explain why he made the jump to this higher level of work. The ALJ was required to provide specific and legitimate reasons why he rejected the treating physician's opinion that hypothetically was supportive of a sedentary level, but the ALJ failed to do so.

Based on the foregoing the court orders as follows:

(1) The ALJ erred when he failed to provide specific and legitimate reasons for discounting or rejecting the opinions of plaintiff's treating physicians, specifically the opinions of Dr. Avalon and Dr. Wright.

(2) Due to the ALJ's error the matter must be REMANDED to the administration for further consideration. Review on remand should not be limited to the medical evidence, but should include a complete review of the administrative record, reconsideration of plaintiff's

1 testimony and the lay testimony and gathering of any relevant evidence or testimony that is

2 necessary to properly consider plaintiff's application for social security benefits.

3   DATED this 7th day of June, 2010.

*(signature)*

J. Richard Creatura
United States Magistrate Judge

ORDER - 10